WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Mike Duffy, III, and Ryan Adelbert Johnson,<br><br>    Defendants. | No. CR-22-08057-PCT-DGC<br><br>**ORDER** |

On September 29, 2023, a jury convicted Defendants Mike Duffy, III and Ryan Johnson of crimes related to shooting at Hopi police officers. Doc. 137. The following month, Defendants filed a motion for a new trial asserting that the parties' estimate of a five-day trial, coupled with the jurors' residence in Northern Arizona, effectively placed a deadline on jury deliberations and coerced a verdict. Doc. 148. The Court denied the motion. Doc. 161.

**I.     Factual Background.**

On January 25, 2024, a member of the jury called the Court's chambers and talked to the Judicial Assistant. The juror had previously called the Court and asked to speak with the judge but was told the case was ongoing and such a discussion would not be appropriate. On January 25, the juror suggested to the Judicial Assistant, in language couched as a "hypothetical," that one or more jurors had been influenced to make a quick decision during deliberations because the jurors wished to go home to Northern Arizona

for the weekend and not return on Monday. The juror indicated that he had spoken to unidentified individuals about the matter. He asked if such a fact could be taken into account at sentencing. The Judicial Assistant did not provide information to the juror or respond to his questions. No further discussions have been held with the juror.

On January 29, 2024, this Court entered an order informing the parties of this contact and requesting their input. Doc. 183. The parties responded. Docs. 184, 187, 188, 189. Defendants request permission to undertake an evidentiary investigation into the juror's suggestions (Doc. 188 at 3) and renew their prior motion for a new trial (Doc. 187 at 3).

After reviewing the parties' arguments and additional authorities, the Court concludes that the juror's suggestion concerns the deliberative process and mental state of the jury and cannot be inquired into under federal law. The Court therefore will deny Defendants' request for an evidentiary investigation and a new trial.

## II. Relevant Federal Law.

In *Tanner v. United States*, 483 U.S. 107 (1987), the Supreme Court addressed the admissibility of a juror's post-conviction affidavit asserting that jurors drank alcohol, ingested recreational drugs, and periodically slept through a criminal trial. The Supreme Court held that the affidavit could not be considered because of the "near-universal and firmly established common-law rule in the United States prohibit[ing] the admission of juror testimony to impeach a jury verdict." *Id.* at 121.

Rule 606(b) of the Federal Rules of Evidence is "grounded in [this] common-law rule against admission of juror testimony to impeach a verdict." *Id.* The rule prohibits consideration of juror evidence "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). A court "may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* The only exceptions are where "extraneous prejudicial information was improperly brought to the jury's attention," "outside influence was improperly brought to

bear upon any juror," or "a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2).[1]

The Ninth Circuit derives several key principles from Supreme Court case law on this rule:

- The Rule applies in any proceeding that involves an inquiry into "the validity of the verdict," however that inquiry is framed by the litigants.

- The Rule bars juror testimony about the jury's "internal processes," whether the claimed irregularity took place inside or outside the jury room.

- The Rule imposes a nearly categorical bar on juror testimony about statements or events "during the jury's deliberations."

*United States v. Leung*, 796 F.3d 1032, 1036 (9th Cir. 2015) (discussing *Tanner* and *Warger v. Shauers*, 574 U.S. 40 (2014)).

In *Leung*, the Ninth Circuit considered whether evidence that jurors had discussed the evidence before the start of deliberations and decided the case prematurely could be used as a basis for an evidentiary hearing or a new trial. The court of appeals held that Rule 606(b) barred consideration of the testimony because it "attempt[ed] to shed light on the internal affairs of the jury." *Id.* The court explained: "parsing how jurors considered the evidence or their mental states while hearing testimony is exactly what *Tanner* and the plain text of Rule 606(b) seek to prevent. We cannot countenance this effort to intrude upon jurors' mental processes concerning the verdict." *Id.* (citation omitted). Other Ninth Circuit cases reach the same conclusion. *See Estrada v. Scribner*, 512 F.3d 1227, 1237 (9th Cir. 2008) (trial court could not consider testimony from jurors that they felt pressured to vote guilty and were treated disrespectfully by other jurors); *U.S. v. Rutherford*, 371 F.3d 634, 639-40 (9th Cir. 2004) (trial court could not consider testimony that jurors ignored the trial court's instructions and discussed defendant's failure to testify during deliberations);

---

[1] The Supreme Court has recognized another narrow exception, holding that the Sixth Amendment requires Rule 606(b)(1) to give way where "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017).

*Vasquez v. Walker*, 359 F. App'x 758 (9th Cir. 2009) (trial court could not consider testimony about foreman's misstatement of the law and refusal to let other jurors read the jury instructions).

The time pressure suggested by the juror who called the Court's chambers on January 25 is similar to the evidence addressed in these Ninth Circuit cases. It concerns a matter internal to the jury and its deliberations and falls squarely within the plain language of Rule 606, which prohibits inquiry into "*any* statement made or incident that occurred during the jury's deliberations," "the effect of *anything* on that juror's or another juror's vote," and "*any* juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1) (emphasis added).

In fact, several courts have held that Rule 606(b) bars evidence that jurors felt time pressure in their deliberations. In *Hart v. Broomfield*, No. CV 05-03633 DSF, 2020 WL 4505792 (C.D. Cal. Aug. 5, 2020), the court addressed testimony that the jury's decision was influenced by a juror who wished to return to work. The juror threatened to hang the jury if others did not wrap up their deliberations quickly, reportedly saying that he was "losing money sitting . . . on jury duty" because it was his occupation's busy season. *Id.* at 32. The district court held that testimony about this situation was inadmissible under Rule 606(b) because the alleged time pressure concerned the internal mental processes of the jury and not extrinsic influences. *Id.* at 34.

Other cases have reached the same result. *See, e.g., McNally v. Frauenheim*, No. CV 16-8572-CJC (KS), 2019 WL 7404836, at *15-17 (C.D. Cal. Nov. 21, 2019), *report and recommendation adopted*, No. CV 16-8572-CJC (KS), 2020 WL 32538 (C.D. Cal. Jan. 2, 2020) (court declined to consider testimony that foreman was determined to have a verdict by a specific date); *Ali v. Grounds*, CV No. 14-0898 BAS (WVG), 2015 WL 13079247, at *20 (S.D. Cal. Mar. 16, 2015), *report and recommendation adopted*, 236 F. Supp. 3d 1241 (S.D. Cal. 2017), *aff'd*, 772 F. App'x 580 (9th Cir. 2019) (court declined to consider statements by jurors that they felt "compelled" to make a decision due to jurors' upcoming vacation plans); *United States v. Oshatz*, 715 F. Supp. 74, 76 (S.D.N.Y. 1989)

(court denied motion for a new trial based on juror testimony that deliberations were rushed to meet vacation and work obligations).

Defendants cite no contrary case law, and the Court has found none. Defendant Duffy attempts to transform this into a case of external influence by speculating that an employer might have required a juror to come back to work or a family member might have pressured a juror to come home. Doc. 188 at 3. But the cases cited above similarly could have been characterized as outside influences — work demands, vacation plans, etc. — and yet the courts viewed time pressure as a matter internal to jury deliberations. The Court likewise is not persuaded that the influences Defendant Duffy speculates about, if they did occur, would take this case outside of Rule 606(b). They still would lead to inquiry into the very things Rule 606(b) prohibits: "any statement made or incident that occurred during the jury's deliberations, "the effect of anything on that juror's or another juror's vote," and "any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1); *see also Gonzalez v. Junda*, No. CV 12-03853 GAF RZ, 2013 WL 2617679, at *5-6 (C.D. Cal. June 11, 2013) ("[T]he purported pressure experienced by the two jurors was necessarily part of the deliberative process and, as such, involved an internal matter.").

Defendant Duffy also argues that the Court should question the wisdom of adhering to the common-law rule outlined in *Tanner* and codified in Rule 606(b). Doc. 188 at 3. But it is not this Court's prerogative to depart from the requirements of Rule 606 or Supreme Court and Ninth Circuit precedent.

**III.   Request for Further Evidentiary Development and a New Trial.**

Defendant Duffy seeks permission to collect more evidence from the juror who called the Court's chambers and from the Judicial Assistant who spoke briefly with him. He also seeks to discover the names of persons with whom the juror spoke. Doc. 188 at 2. In effect, Defendant Duffy seeks to conduct an investigation and collect further evidence.

He is not alone. Defendants in other cases have requested evidentiary hearings to to inquire into matters that influenced jury deliberations. In *Tanner*, the Supreme Court

case where jurors were alleged to have consumed alcohol and drugs and slept through portions of the trial, the defendants sought "permission to interview jurors" and present the results at an "evidentiary hearing." 437 U.S. at 113. They argued that the trial court erred in denying their request for this additional discovery. *Id.* at 116. The Supreme Court disagreed, holding "that the District Court did not err in deciding, based on the inadmissibility of juror testimony and the clear insufficiency of the nonjuror evidence offered by petitioners, that an additional post-verdict evidentiary hearing was unnecessary." *Id.* at 127.

Similarly, the defendant before the Ninth Circuit in *Leung* requested an evidentiary hearing into alleged improprieties during the jury's deliberation. 796 F.3d at 1094. The Ninth Circuit upheld the district court's denial of such a hearing: "In light of [Rule 606(b)'s] prohibition on juror testimony regarding the internal affairs of the jury, Leung was not entitled to a new trial or evidentiary hearing on the basis of the post-verdict juror affidavit." *Id.* at 1038.

"The decision to conduct a hearing into alleged jury misconduct and to determine its extent and nature is discretionary." *U.S. v. Berry*, 627 F.2d 193, 197 (9th Cir. 1980). The alleged impropriety in this case — a rushed verdict because jurors wanted to return home on Friday night and not reappear on Monday — is an internal jury matter barred by Rule 606(b)(1). Because such matters cannot be considered by the Court, Defendants are not entitled to further evidentiary development of them. Nor are Defendants entitled to conduct discovery in a search for some external influence that might have affected the jury. Without some reasonable basis to believe that such an eternal influence occurred in this case, the discovery would be a mere fishing expedition — the kind of expedition which, if allowed simply on the request of a party, could be used to unsettle the finality of virtually every jury verdict.

Defendants renew their motion for a new trial, originally filed in October 2023 and denied by the Court in its November 21, 2023 order. Docs. 148, 161. Defendant Johnson does not rely on the juror's January 25 communication as the basis for the renewed motion.

He instead argues that it is "easy to understand" how the expected length of the trial and the jurors' residency in Northern Arizona would create pressure on the jury to end their deliberations Friday night. Doc. 187 at 2-3. But these are the same arguments articulated in Defendants original motion for a new trial. For the reasons the Court outlined in its prior order denying the motion, the Court will deny the renewed motion. *See* Doc. 161 at 3-7.

**IV.   Conclusion.**

The Court is not insensitive to Defendants' argument that fundamental fairness requires further inquiry into the juror's January 25 communication. *See* Doc. 188 at 3. The Supreme Court acknowledged similar fairness concerns in *Tanner*. It had "little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior." 483 U.S. at 120. But as the Court explained:

> It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. . . . Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

483 U.S. at 120-21.

**IT IS ORDERED** that Defendants' motions for an evidentiary hearing and a new trial (Docs. 187, 188) are **denied**.

Dated this 16th day of February, 2024.

David G. Campbell
Senior United States District Judge